IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| SAMUEL BROWN, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| VS. | : | 1: 15-CV-79 (LJA) |
| | : | |
| WARDEN PHILLIP HALL, | : | |
| | : | |
| Respondent. | : | |

**RECOMMENDATION**

Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2009 Ben Hill County conviction for possession of tools for the commission of a crime and trafficking in cocaine. (Docs. 1; 8-2; 8-13, p. 26). Following a jury trial and the return of a guilty verdict, Petitioner was sentenced to thirty years, with twenty years to serve and the remaining ten years to be served on probation. (Doc. 8-14, p. 1). Petitioner's convictions were affirmed on direct appeal, but the Georgia Court of Appeals remanded the case to the trial court to conduct a "similar transaction" hearing pursuant to *Williams v. State*, 251 Ga. 640 (1991), or to determine whether such a hearing was actually held in Petitioner's probation revocation hearing. (Doc. 8-2, pp. 2-3), *Brown v. State*, 307 Ga. App. 99, 103 (2010).[1]

Petitioner then filed his state habeas petition on January 19, 2012 in the Superior Court of Mitchell County. (Doc. 8-2). The state habeas court held an evidentiary hearing, but ultimately

---

[1] Petitioner states in his brief that the trial court determined on remand that such a hearing had occurred during Petitioner's pretrial probation revocation hearing, and that Petitioner did not appeal the court's decision within thirty days. (Doc. 4, p. 13).

denied relief. (Doc. 8-2). The Supreme Court of Georgia denied Petitioner's application for a certificate of probable cause to appeal on April 20, 2015. (Doc. 8-3). Petitioner then filed this federal habeas petition on May 14, 2015. (Doc. 1).

## I. Standard of Review

Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, the Supreme Court held that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "In addition, a state court decision

2

involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 407) (alterations in original). Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

In other words, Petitioner may obtain federal habeas relief ***only*** if the challenged state court decision was either contrary to or an unreasonable application of Federal law as determined by the Supreme Court, or if the state court made a decision based on an unreasonable determination of the facts. *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3, 7 (2002). "[T]he focus is on the state court's decision or resolution of the case, not on the state court's reasoning that led to the result." *Matos v. Sec., Fla. Dept. of Corr.*, 603 F. App'x 763, 767 (11th Cir. 2015) (citing *Gill v. Mecusker*, 633 F.3d 1272, 1291 (11th Cir. 2011)).

## II. Petitioner's Habeas Claims

In his Petition and memorandum in support (Docs. 1, 4), Petitioner raises the following two grounds for relief:

1. Appellate counsel rendered ineffective assistance by failing to allege trial counsel's ineffectiveness for failing to request a jury charge on the defense of equal access; and
2. Appellate counsel rendered ineffective assistance when she failed to investigate and allege trial counsel's ineffectiveness for failing to investigate critical aspects of Petitioner's equal access defense.

## III. Discussion

### Ineffective Assistance Standard

In order to establish that his counsel's representation was constitutionally defective,

Petitioner must show (1) that his counsel's representation was deficient, and (2) that Petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Chandler v. U.S.*, 218 F.3d 1305, 1313-14 (11th Cir. 2000). There is a strong presumption in place that the challenged action constituted sound trial strategy. *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996). As such, a court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (internal quotations omitted). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have produced a different result. *Weeks v. Moore*, 216 F.3d 951, 960 (11th Cir. 2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

followed." *Strickland*, 466 U.S. at 697.

1. <u>Appellate Counsel's Failure to Raise Trial Counsel's Ineffectiveness for Failing to Request a Jury Charge as to the equal access defense</u>

Petitioner first argues that his counsel on appeal rendered ineffective assistance when she did not raise trial counsel's failure to request a jury charge as to the defense of "equal access." (Doc. 4). Petitioner asserts that the record supported an equal access instruction, that trial counsel was ineffective for not requesting a jury instruction on equal access, and that appellate counsel was ineffective for not asserting trial counsel's ineffectiveness. (Doc. 4). Respondent asks this Court to defer to the state habeas court's determination that Petitioner failed to establish he received ineffective assistance of counsel on appeal. (Docs. 7-1, 8-2).

In his state habeas petition, Petitioner argued,

> [a]lthough appellate counsel alluded to an equal access defense in her appeal of [Petitioner's] conviction, based on insufficient evidence, she failed to allege that trial counsel was ineffective for his failure to request a jury charge on the defense of equal access, which had become the centerpiece of [Petitioner's] defense at trial.

(Doc. 8-1, p. 5).

In its findings of fact, the state habeas court found that appellate counsel made a "general" equal access claim. (Doc. 8-2, p. 4).

> [Appellate] counsel alleged trial counsel was ineffective because [trial counsel] failed to mount a defense of equal access and [appellate counsel] also claimed the evidence to convict Petitioner was insufficient because due to other people having access to the house, the State failed to prove that Petitioner was in actual or constructive possession of the contraband.

*Id.* "[Appellate c]ounsel chose not to raise a 'specific' equal access claim because, during the trial, no specific person was ever alleged to have left the drugs at the house." (Docs. 8-2, p. 5; 8-

5

5, p. 19). Appellate counsel felt that if Petitioner had not "backed off" of his assertions that other people left the drugs in his house, a "specific" equal access argument would have been more feasible. *Id.* "[Appellate counsel] felt that, to lodge a successful equal access claim, the defense would have to go further than merely alleging that people aside from Petitioner had access to the house." *Id.*; (Doc. 8-4, pp. 13-14, 19).

The state habeas court also found that appellate counsel did not raise trial counsel's ineffectiveness for failure to ask for a jury instruction, because "first, Petitioner was the only person in the house at the time the contraband was located; second, Petitioner had a surveillance video monitoring his house. Petitioner also had a large sum of money on his person at the time he was arrested." (Doc. 8-2, p. 6).

The state habeas court began by considering the first prong under *Strickland*, and determined,

> Petitioner has failed to show that appellate counsel's decision was unreasonable when she chose not to allege trial counsel was ineffective due to his failure to request a jury charge on equal access. Counsel considered raising this issue on appeal but chose not to because she felt that it would not have been successful on appeal due to the facts adduced at trial. Specifically, since counsel could not pin the drugs onto another specific person who had access to the house, she did not claim that trial counsel was ineffective even though he did not request a charge on equal access.

(Doc. 8-2, p. 8). The state habeas court determined that an equal access charge was not supported by the facts, especially in light of the Georgia Court of Appeals' finding that the state presented more evidence than mere presence and equal access linking Petitioner to the contraband. *Brown*, 307 Ga. App. at 101; (Doc. 8-2, p. 8).

Next, the state habeas court determined that Petitioner failed to establish prejudice under

the second prong of the *Strickland* standard. (Doc. 8-2, p. 9). The state habeas court reasoned that the evidence of Petitioner's guilt was "overwhelming," explaining that Petitioner was the only occupant when the house was searched; a large sum of money was found on Petitioner; Petitioner went to the bathroom before officers searched the house; officers then found digital scales in the toilet tank; and officers found cocaine under balled up toilet paper in the restroom trashcan. *Id.* Furthermore, Petitioner was previously convicted of selling cocaine. *Id.*

Petitioner asserts that the state habeas court unreasonably concluded that counsel was not deficient for failing to raise the claim that trial counsel was ineffective for failing to request a jury charge on equal access. (Doc. 4, pp. 31-32). Petitioner argues that appellate counsel's testimony was inconsistent and did not demonstrate a reasonable strategy. (Doc. 4, pp. 26-32). Petitioner argues that appellate counsel took a position in violation of the reasonable doubt standard when she testified that Petitioner was required to name the person who possessed the drugs in order to assert an equal access defense. (Doc. 4, p. 27). Petitioner asserts that Courts are not required to "fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009); (Doc. 4, p. 26).

Appellate counsel testified at the state habeas evidentiary hearing that she did not omit any issues she thought might win a reversal on Petitioner's behalf. (Doc. 8-4, p. 13). Appellate counsel testified that she was familiar with the equal access defense theory, and that she made a "general claim for equal access." (Doc. 8-4, pp. 14-15, 19). Appellate counsel knew about infant clothing stored at the premises, the light bill in a relative's name, and that there were three other vehicles in Petitioner's relatives' names parked there, and she took all of this into consideration

7

when raising the appeal. (Doc. 8-4, pp. 19-20).

Petitioner notes that the Georgia Court of Appeals has held that to make a showing of equal access, it must "affirmatively" appear from the evidence that persons other than the defendant had equal opportunity to commit the crime in question. *Cochran v. State*, 190 Ga. App. 884, 885 (1989). It is not enough that others might have had access; it must affirmatively appear that others did have equal access. *Id*.

> The equal access rule entitles a defendant to acquittal where the only evidence of possession is the defendant's ownership or control over the premises, and the defendant can show that others recently had equal access to the premises. It is simply a defense available to the accused to whom a presumption of possession flows.

*Jackson v. State*, 271 Ga. App. 278, 282 (2005). "Thus, a trial court should charge on equal access when the State is relying upon a presumption of possession based upon ownership or exclusive control over the premises in order to establish the offense charged." *Thrasher v. State*, 289 Ga. App. 399, 401 (2008).

Petitioner argues that the testimony at trial, specifically that of Sheriff Bobby McLemore, witness Thornton, and Petitioner, was sufficient to establish an equal access defense. (Doc. 4, pp. 19-20). Petitioner cites to *Heath v. State*, for the contention that equal access is a question of fact for the jury. 186 Ga. App. 655, 657 (1988).[2]

Here, the appellate court determined that the state presented more evidence than Petitioner's mere presence and equal access to link him to the drugs. *Brown*, 307 Ga. App. at

---

[2] In *Heath*, the Court reasoned that although the judge charged the jury on equal access, "[j]ust because several people were in Martha's apartment when the various amounts of cocaine and connected paraphernalia were found in different locations does not conclusively establish that one or more of these people other than defendants had 'equal access' to the contraband so as to block a finding of appellants' possession. The circumstances [ ] do not compel such a finding as a matter of law." 186 Ga. App. 655, 657 (1988).

101; (Doc. 8-2, p. 8). However, even if trial counsel rendered ineffective assistance by failing to request a jury charge on equal access, it does not appear from the record that the state habeas court decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law when it determined that appellate counsel was not ineffective. Nor does it appear that the state habeas court fabricated tactical decisions on behalf of appellate counsel. The state habeas court properly applied the *Strickland* standard, and determined that appellate counsel was not deficient, and that Petitioner suffered no prejudice from appellate counsel's failure to raise trial counsel's ineffectiveness for failing to request a jury charge as to equal access.

Furthermore, even if appellate counsel was incorrect in her belief that the record did not support a charge of equal access, or if she took a position contrary to the reasonable doubt standard as Petitioner argues, the state habeas court did not err when it determined that Petitioner suffered no prejudice, especially in light of the evidence of Petitioner's guilt, aside from the mere ownership or control of the premises, brought out at trial.

2. <u>Appellate Counsel's Ineffectiveness for Failing to Allege Trial Counsel's Ineffectiveness in Failing to Conduct an Adequate Investigation in Support of Brown's Equal Access Defense</u>

Petitioner argues that appellate counsel was ineffective when she failed to allege that trial counsel was ineffective for failing to conduct an "adequate investigation" as to Petitioner's equal access defense. (Doc. 4). Respondent asks this Court to defer to the state habeas court's finding that counsel was not ineffective. (Doc. 7-1). As to this ground, the state habeas court determined that no prejudice resulted, as the evidence Petitioner provided in support of this argument (the affidavit of Petitioner's sister, Stephanie Cooper) was cumulative of the evidence presented at trial, or did nothing to further his equal access defense. (Doc. 8-2, p. 9).

9

Petitioner argues that, while "appellate counsel alleged that counsel was ineffective for failing to raise an equal access defense, she also failed to support her assertion with adequate investigation herself." (Doc. 4, p. 38). Petitioner asserts that appellate counsel did not allege that trial counsel's investigation was inadequate, and that appellate counsel "completely failed to put up any evidence which would have demonstrated prejudice to [Petitioner], based on that error . . . ." (Doc. 4, p. 40). At the same time, Petitioner asserts that trial counsel "questioned witnesses about access of others to the house, argued for a directed verdict based on that defense and actually testified at the motion for new trial hearing that he had raised the defense . . . ." (Doc. 4, p. 40). A review of the record also shows that appellate counsel spoke with Petitioner and a couple of his family members, and reviewed lower court documents in preparing her motion for new trial. (Doc. 8-4, pp. 10-11).

Petitioner argued in his state habeas petition that,

> [a]lthough appellate counsel alleged that trial counsel was ineffective on several grounds, she did not attack trial counsel's failure to secure evidence and witness testimony which would have demonstrated, contrary to evidence and argument presented by the state at trial, that Brown was not the sole occupant of house in which he resided and was arrested, thus supporting his claimed equal access defense.

(Doc. 8-1, p. 5).

The state habeas court reasoned that "[t]he evidence presented by Petitioner to show the evidence that trial counsel should have investigated and used as part of Petitioner's equal access defense was either cumulative of the evidence already presented at trial or did nothing to further his equal access defense." (Doc. 8-2, p. 9). "Petitioner has failed to establish that but for the alleged error of appellate counsel, there is a reasonable probability that the outcome of the appeal

10

would have been different." *Id.*

> The only evidence presented by Petitioner that is different from the evidence presented at trial is that Stephanie Cooper had some bills in her name and she paid rent at the residence. The fact that his sister paid the bills and rent at the house does not support Petitioner's claim that the drugs were not his and someone else left the drugs there. At trial, the jury already learned that Petitioner's sister and cousin often stayed there. The jury learned that the house was a 'family' house and a number of family members had access to the house. In addition, these family members would bring guests to the house. The jury heard Petitioner's argument that someone else, maybe one of these people floating in and out of this house, left the drugs there. Even after hearing this evidence, the jury still returned a guilty verdict on both counts.

(Doc. 8-2, p. 11).

Petitioner argues that Ms. Cooper's affidavit directly addresses a concern raised by the Georgia Court of Appeals, and thus, her affidavit was not cumulative evidence. (Doc. 4, pp. 44-45). Petitioner brings up the Court of Appeals' observations that (1) officers did not discover evidence of another person residing at the home, and (2) there was lack of evidence of other persons residing in the home. (Doc. 4, p. 44). The Court of Appeals reasoned that "[w]hile [Petitioner] testified that other individuals visited his home occasionally and that an overnight visitor had been with him until the day of the search, the State presented more evidence than 'mere presence and equal access' linking [Petitioner] to the contraband." *Brown*, 307 Ga. App. at 101. In addition to the lack of evidence of other persons residing in the home, the Court of Appeals mentioned that Petitioner resided at the residence for five years, all items were hidden well within the premises, he possessed a substantial amount of cash on his person at the time of the search, and he used the closed circuit surveillance system to monitor his home. *Id.* at 100-101.

11

Ms. Cooper states in her affidavit that (1) she had a key and free access to the house; (2) at least two other people also had keys and free access to the house; and (3) these persons with keys and free access were able to and frequently had visitors and overnight guests. (Doc. 8-37, p. 11). Ms. Cooper also states that the cable and power bills were in her name, and that she contributed to the bills. (*See* Docs. 8-37, p. 11; 8-38). Finally, she states that her grandmother owned the house and she paid rent to her grandmother. (Doc. 8-2, p. 10; Doc. 8-37, p. 12).

The state habeas court noted that,

> [t]rial counsel presented evidence at trial that the house Petitioner lived in was a 'family house,' which could have been used by Petitioner and any of his cousins. The house was considered a gathering place for the family. The house was owned by Petitioner's grandmother who lived across the street. Petitioner had been living in the house since 2003.

(Doc. 8-2, p. 10) (internal citations omitted). Petitioner also testified at trial that his sister and cousin had access to the house, and that a woman, Shanara Benton, spent the night at the house on the night before the police discovered the cocaine. *Id.* Petitioner testified that Shanara Benton, who was friends with Petitioner's enemy, Corey Brooks, could have placed the drugs there, but Petitioner "backed off" from this assertion. *Id.* Petitioner also responded "No, Sir" to the question of whether the drugs belonged to Todd Wallace. *Id.*

The state habeas court concluded Petitioner did not show a reasonable probability that the outcome of the appeal would have been different had appellate counsel raised this issue on appeal. *Id.* at 12. The state habeas court's decision that Petitioner suffered no prejudice because the affidavit of Ms. Cooper was cumulative of the evidence presented at trial does not appear to be contrary to, or involve an unreasonable application of, clearly established federal law. The state habeas court correctly applied the *Strickland* standard.

## IV. Conclusion

Petitioner has failed to demonstrate that the state habeas court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Thus, the undersigned recommends that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**. 28 U.S.C. §§ 2254(d)(1)-(2); 2254(e)(1).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The district judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may be reviewed by the district judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 16th day of May, 2016.

                                          **s/ *THOMAS Q. LANGSTAFF***
                                          **UNITED STATES MAGISTRATE JUDGE**